# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------------- X

AMGAD S. MIKHAIL,                                    **Index No.**

                Plaintiff (s),        **VERIFIED COMPLAINT**

     -against-

THE PROCTER & GAMBLE COMPANY, PROCTER &
GAMBLE PRODUCTIONS, INC., THE PROCTER &
GAMBLE MANUFACTURING COMPANY and THE
PROCTER & GAMBLE DISTRIBUTING COMPANY,

              Defendant (s),
_____ *X*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Amgad S. Mikhail (hereinafter "Plaintiff") through his attorneys, the Gambone

Law Group, PLLC, complaining of the defendant, respectfully alleges upon information and

belief as follows:

### INTRODUCTION

### NATURE OF THE ACTION AND FACTS

      1.    This is a lawsuit for personal injuries, conscious pain and suffering, past and future medical

expenses and loss of income sustained by the Plaintiff as a result of the Defendant's manufacturing,

marketing, distribution, and sale of Old Spice deodorant and antiperspirant aerosol, stick and various body

spray products (the "Products") throughout the State of New York and throughout country, and the

plaintiff's use of said products that contained dangerously high levels of benzene, a carcinogenic impurity

that has been linked to leukemia, lymphoma and other cancers.

      2.    Old Spice is a brand of deodorants and antiperspirants manufactured, marketed, managed,

maintained, operated, distributed, and sold by Defendant.

      3.    This action seeks to compensate the plaintiff for injuries sustained as a result of the deceptive

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM        INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 10/05/2023

and misleading business practices of the Defendant and their carelessness, negligence, recklessness and intentional disregard with respect to the manufacturing, marketing, maintenance, operation, management, distribution, and sale of the Products including, but not limited to:

> Old Spice Fresh Collection Matterhorn Scent Men's Body Spray;
>
> Old Spice Fresh Collection Danali Scent Men's Body Spray;
>
> Old Spice High Endurance Clear Gel Pure Sport Scent Men's Anti-Perspirant & deodorant;
>
> Old Spice Antiperspirant and Deodorant for Men, High Endurance, Pure Body Pray, Lemon Lime Scent; and
>
> Old Spice Wild Collection Wolfthorn Scent Men's Cologne Spray

4.    The Products are not designed to contain benzene, and in fact no amount of benzene is acceptable in antiperspirant sprays/sticks such as the Products manufactured by Defendant. The presence of benzene in the Products renders them adulterated, misbranded, dangerous, hazardous, lethal, deadly and therefore illegal to sell under both federal and state law. As a result, the Products are and were unsafe and illegal to sell under federal law and state law, and therefore, worthless.

5.    Defendant does specifically list both the active and inactive ingredients of the Products, but fails to disclose that the products contain "benzene".

6.    Benzene is a widely recognized and incredibly dangerous substance, especially in the context of applying it to the skin. For example, benzene is known to harm the bone marrow and long exposure can lead to blood cancer, such as leukemia[1].

7.    Benzene is a component of crude oil, gasoline, and cigarette smoke, and is one of the elementary petrochemicals. The Department of Health and Human Services has determined that benzene causes cancer in humans. Likewise, the Food and Drug Administration ("FDA") lists benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." Benzene is associated with blood cancers such as leukemia

---

[1] https://emergency.cdc.gov/agent/benzene/basics/facts.asp

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

and skin cancer such as lymphoma[2]. A study from 1939 on benzene stated that "exposure over a long period of time to any concentration of benzene greater than zero is not safe,"[3] which is a comment reiterated in a 2010 review of benzene research specifically stating: "There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion."[4]

8.      According to the American Cancer Society:

IARC classifies benzene as "carcinogenic to humans," based on sufficient evidence that benzene causes acute myeloid leukemia (AML). IARC also notes that benzene exposure has been linked with acute lymphocytic leukemia (ALL), chronic lymphocytic leukemia (CLL), multiple myeloma, and non-Hodgkin lymphoma.[5]

9.      Moreover, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[6]

10.     According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, skin absorption, ingestion, skin and/or eye contact."[7]· Skin absorption is particularly concerning as there have been multiple FDA studies showing that structurally similar chemicals in sunscreen products are found in the blood at high levels after application to exposed skin.

11.     Consumers like the Plaintiff herein trust manufacturers such as Defendant to sell Products

---

[2] National Cancer Institute, Cancer-Causing Substances, Benzene, https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene.

[3] Hunter, F.T. (1939)/ chronic Exposure to Benzene (Benzol). II The Clinical Effects. *Journal Of Industrial Hygiene and Toxicology*. 1939 Vol.21 pp. 331-54, https://www.cabdirect.org/cabdirect/abstract/1940270388.

[4] Smith,Martyn T. (2010). Advances of Understanding Benzene Health Effects and Susceptibility.
*Annual Review of Public Health*. 2010 Vol. 31:133-148, https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646.

[5] American Cancer Society, Benzene and Cancer Risk (January 5, 2016) (https://www.cancer.org/cancer/cancer-causes/benzene.html)

[6] Centers for Disease Control and Prevention, Facts about Benzene, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

[7] National Institute for Occupational Safety and Health (NIOSH), Benzene, https://www.cdc.gov/niosh/npg/npg0049.html.

3

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 616111/2023
RECEIVED NYSCEF: 10/05/2023

that are safe and free from harmful known toxins, including but not limited to benzene.

12.    Plaintiff expected that the Product he purchased will comply with its labeling and not contain any knowingly harmful substances like benzene.

13.    Defendant's marketing and advertising campaign includes the one place that every consumer look to when purchasing a product – the packaging and labels themselves. Consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products.

14.    In addition to the label, Defendant maintains a webpage containing the ingredients in the Products. Defendant specifically states within the webpage that they do not use benzene in any of their Products.[8]

15.    However, Defendant's advertising and marketing campaign is and was false, deceptive and misleading because the Products contain benzene, which Defendant does not list or mention anywhere on the Products' packaging or labeling.

16.    Plaintiff relied on Defendant's misrepresentations and omissions of what is in the Products when Plaintiff purchased the Products.

17.    On November 3, 2021, Valisure, an online pharmacy registered with the FDA, "detected high levels of benzene and other contaminants in specific batches of body spray products, some of which contain active pharmaceutical ingredients aluminum chlorohydrate or aluminum sesquichlorohydrate."[9]

18.    Valisure tested the Products manufactured by Defendant, which were found to contain as much as 17.7 parts per million of benzene, the highest level of benzene in all of the products tested by Valisure.[10]

19.    The FDA does state that if the use of benzene is "unavoidable in order to produce a drug

---

[8] https://us.pg.com/ingredients/
[9] VALISURE, VALISURE CITIZEN PETITION ON BENZENE IN BODY SPRAY PRODUCTS, Nov.3, 2021, https://www.valisure.com/wp-content/uploads/Valisure-FDA/Citizen-Petition-on-Body-Spray-v4.0-3.pdf (the "Valisure Petition"), at 1.
[10] *Id.* At 12-14

4

product with a significant therapeutic advance," then the drug product may contain up to 2 ppm of benzene.[11] However, many of Defendant's Products that were tested contain levels of benzene above this amount. Regardless, according to Valisure, "[b]ecause many of the body spray products Valisure tested did not contain detectable levels of benzene, it does not appear that benzene use is unavoidable for their manufacture, and considering the long history and widespread use of these products, it also does not appear that they currently constitute a significant therapeutic advance."[12] Accordingly, any level of benzene in Defendant's Products is unacceptable and therefore renders the Products adulterated, misbranded, unsafe, worthless, dangerous and hazardous.

20.     Defendant did not disclose the actual or potential presence of benzene in its antiperspirant and deodorant products on the Products' labeling, or in any advertising or website promoting the Products. Defendant did not disclose the presence of benzene in the Products to Plaintiff at the point of sale or at any time before the point of sale.

21.     Antiperspirant body sprays are considered over-the-counter ("OTC") drugs that are regulated by the United States Food & Drug Administration ("FDA") pursuant to the federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 et seq., as well as analogous state statutes and regulations. Likewise, deodorants are considered cosmetics and so are also regulated by the FDA pursuant to the FDCA and analogous state statutes and regulations.

22.     As OTC drug products regulated by the FDA, the Products must be both safe and effective and are subject to federal current Good Manufacturing Practices ("cGMP") regulations and the FDCA's state-law analogues. These cGMP regulations require OTC products and medications like the Products to meet safety, quality, purity, identity, and strength standards. See 21 U.S.C. § 51(a)(2)(B). Federal and state regulatory regimes require that labeling for OTC products. 21 C.F.R. 201.66 establishes labeling requirements for OTC products and defines an inactive ingredient as "any component other than an active

---

[11] *Id.* At 1 (emphasis added.)
[12] *Id.* At 1-2.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 10/05/2023

ingredient."[13] An "active ingredient" is "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body of humans. The term includes those components that may undergo chemical change in the manufacture of the drug product and be present in the drug product in a modified form intended to furnish the specified activity or effect." (Emphasis added).

23.    21 C.F.R. § 210.1(a) states that the cGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess." In other words, entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

24.    Any drug product not manufactured in accordance with cGMPs is deemed "adulterated" or "misbranded" and may not be distributed or sold in the United States. See 21 U.S.C. §§ 331(a), 351(a)(2)(B). States have enacted laws adopting or mirroring these federal standards.

25.    FDA regulations require a drug product manufacturer to have "written procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity they purport or are represented to possess." 21 C.F.R. § 211.100.

26.    A drug product manufacturer's "[l]aboratory controls shall include the establishment of scientifically sound and appropriate specifications, standards, sampling plans, and test procedures designed to assure that components, drug product containers, closures, in process materials, labeling, and drug products conform to appropriate standards of identity, strength, quality, and purity." 21 C.F.R. § 211.160.

27.    "Laboratory records shall include complete data derived from all tests necessary to assure compliance with established specifications and standards, including examinations and assays" and a "statement of the results of tests and how the results compare with established standards of identity,

---

[13] https://www.fda.gov/media/72250/download.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/05/2023

strength, quality, and purity for the component, drug product container, closure, in-process material, or drug product tested." 21 C.F.R. § 211.194.

28.    Defendant disregarded the cGMPs outlined above. As a manufacturer, distributor, and seller of an OTC drug product, Defendant had and has a duty to ensure that its Products did not contain excessive (or any) levels of benzene, including through regular testing. But based on Valisure's testing results set forth above, Defendant made no reasonable effort to test its Products for benzene or other impurities. Nor did it disclose to Plaintiff or any other consumers in any product advertising, labeling, packaging, or marketing that its antiperspirant and deodorant products contained benzene, let alone at levels that are many multiples of the emergency, interim limit set by the FDA. To the contrary, Defendant represented and warranted, expressly and impliedly, that the Products were of merchantable quality, complied with federal and state law, and did not contain carcinogens, reproductive toxins, or other impurities such as benzene.

29.    If Defendant had not routinely disregarded the FDA's cGMPs, or had fulfilled their quality assurance obligations, Defendant would have identified the presence of the benzene contaminant almost immediately.

30.    Further, had Defendant adequately tested its Products for benzene and other carcinogens, reproductive toxins, and impurities, it would have discovered that its Products contained benzene at levels above the FDA's limit (to the extent even applicable), making those products ineligible for distribution, marketing, and sale.

31.    Accordingly, Defendant knowingly, or at least negligently and carelessly, manufactured, distributed and introduced contaminated, adulterated, misbranded, dangerous and hazardous Products containing dangerous amounts of benzene into the U.S. market.

32.    Defendant also knew or should have known about the carcinogenic potential of benzene because it is classified as a Group 1 compound by the World Health Organization and the International Agency for Research on Cancer, meaning that it is "carcinogenic to humans."

33. Ironically, Defendant actually touts that "[p]roduct safety is [its] top priority."[14] Defendant represents that "[a]t a minimum we ensure our products comply with applicable laws. In several areas we set our standards higher than those required by law. When this happens we also expect our suppliers and partners to meet these standards." Defendant further represents that "[b]efore we launch a product our [Safety and Environmental Assurance Centre] scientists work with teams across P&G to assess the product's safety and impact on the environment." Based on the foregoing, however, these representations are false. Defendant has not ensured compliance with applicable laws (or any "higher standards" it claims to maintain) because its failure to comply with cGMPs resulted in the contamination of its Products with benzene.

34. The presence of benzene—and Defendant's failure to comply with cGMPs— renders the Products both adulterated and misbranded under the FDCA. The Products are adulterated because they are "drug[s] and the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drug meets the requirements of this chapter as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess." 21 U.S.C. § 351(a)(1).

35. The Products are misbranded because their labeling is "false" and "misleading" because it does not disclose the presence of benzene. 21 U.S.C. § 352(a)(1).

36. Under federal law, a product that is "adulterated" or "misbranded" cannot legally be manufactured, advertised, distributed, or sold. 21 U.S.C. § 331(a). Adulterated and misbranded products thus have no economic value and are legally worthless, hazardous and dangerous.

37. When Plaintiff started purchasing Defendant's Products, more than ten (10) years ago, Plaintiff did not know, and had no reason to know, that Defendant's Products were misleading, adulterated and misbranded and thus dangerous to health and life, lethal unlawful to sell or purchase as set forth herein.

---

[14] https://www.P&G.com/brands/our-products-and-ingredients/our-approach-to-the-safety-of-products-and-ingredients/.

Not only would Plaintiff not have purchased Defendant's Products at all had he known the Products contained benzene, he would not have been capable of purchasing them if Defendant had done as the law required and tested those products for benzene and other carcinogens, reproductive toxins, and impurities.

38.   Moreover, no reasonable consumer would have paid any amount for nor used products containing benzene, a known carcinogen and reproductive toxin, much less above the limits set by the FDA (even assuming those allowances apply to Defendant's products).

39.   Thus, if Plaintiff had been informed that Defendant's Products contained or may contain benzene, he would not have purchased or used the Products at all, making such omitted facts material to him.

40.   Plaintiff purchased Defendant's products at approximately April of 2012.

41.   Plaintiff had been continuously purchasing Defendant's Products for over 10 years and up until date of injury.

42.   Plaintiff had been continuously using Defendant's Products for over 10 years and up until date of injury.

43.   Plaintiff was injured as a result of the defendant's negligence and carelessness which resulted in serious and permanent personal injuries because the Products are worthless, dangerous for health and life, lethal and hazardous as they are misleading, adulterated and contain harmful levels of benzene, and Defendant has failed to warn consumers of this fact. Such illegally sold products are worthless, hazardous and dangerous and have no value. See *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); see also *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for.").

44.   Plaintiff bargained for antiperspirant and deodorant products free of contaminants and

dangerous substances, and was deprived the basis of the bargain when Defendant sold him Products containing the dangerous substance benzene, which rendered the Products dangerous, hazardous, unmerchantable and unfit for use.

45.    Plaintiff utilized and applied the defendant's Products for an extended period of time, and was later diagnosed with cancer. The cancer was caused by Benzene exposure contained in and created by the defendant in defendant's Products. This lawsuit seeks damages against the Defendant for causing his cancer.

### THE PARTIES: PLAINTIFF

46.    During the applicable statute of limitations period, Plaintiff purchased and used the Defendant's products that contained benzene. Plaintiff used old spice products from approximately 2012 to 2021 and, as a result, was diagnosed with Lymphoma cancer on or about November 18, 2021. Plaintiff's cancer was caused by exposure to benzene which was contained within the Defendant's products.

47.    Had the Defendant not made false, misleading, negligent, careless and deceptive representations and omissions regarding the Defendant's Products that contained benzene, Plaintiff would not have been willing to purchase and use the Products. Plaintiff would not have been willing to purchase and use the Products for extended period of time. Plaintiff purchased, purchased more of, and/or paid more for, and used and used more of the Products than he would have had, had he known the truth about the Products. As a result, the Products Plaintiff received were worthless, dangerous to health and life, lethal and hazardous because they contain the known carcinogen benzene. Accordingly, Plaintiff was injured as a result of Defendant's negligence, carelessness and improper conduct.

48.    This lawsuit seeks damages against Defendant for causing the cancer. Plaintiff Amgad S. Mikhail brings suit against Defendant THE PROCTER & GAMBLE COMPANY, PROCTER & GAMBLE PRODUCTIONS, INC., THE PROCTER & GAMBLE MANUFACTURING COMPANY and THE PROCTER & GAMBLE DISTRIBUTING COMPANY,  named herein for causes of actions FIRST, SECOND, THIRD, FORTH, FIFTH, SIXTH and SEVENTH,  listed herein and

10

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM
INDEX NO. 816111/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/05/2023

seeks general damages directly and foreseeably resulting from Defendant's actions, consequential damages, and exemplary or punitive damages as allowed by law and in an amount to be proved at trial.

### THE PARTIES: DEFENDANT

49.   Defendants are THE PROCTER & GAMBLE COMPANY, PROCTER & GAMBLE PRODUCTIONS, INC., THE PROCTER & GAMBLE MANUFACTURING COMPANY and THE PROCTER & GAMBLE DISTRIBUTING COMPANY (P&G Defendants)

50.   P&G Defendants distributes the Products throughout the United States and the State of New York. The Old Spice Products, including the adulterated Old Spice Products purchased by Plaintiff, are and were available at retail stores and via on-line vendors/ providers throughout the State of New York and the United States. Defendant was negligent, careless and reckless by creating, manufacturing, maintaining, managing, operating, designing, marketing, advertising, and distributing the aforesaid products in a false, misleading, and deceptive manner despite notice of their hazardous, dangerous and worthless condition, to members of the general public, including the plaintiff herein.

51.   P&G Defendants distributes the Products throughout the United States and the State of New York. The Old Spice Products, including the adulterated Old Spice Products purchased by Plaintiff, are and were available at retail stores and via on-line vendors/ providers throughout the State of New York and the United States. Defendant was negligent, careless and reckless by creating, manufacturing, maintaining, managing, operating, designing, marketing, advertising, and distributing the aforesaid products in a false, misleading, and deceptive manner despite notice of their hazardous, dangerous and worthless condition, to members of the general public, including the plaintiff herein, putting member of general public at risk including but not limited to Plaintiff herein.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2                                                          RECEIVED NYSCEF: 10/05/2023

### JURISDICTION AND VENUE

52.     That at all the times herein mentioned the plaintiff, AMGAD S. MIKHAIL, was and still is a resident of the County of Nassau of the State of New York.

53.     Plaintiff, AMGAD S. MIKHAIL, has an intent to remain a resident of the County of Nassau of the State of New York and is therefore a domiciliary of State of New York.

54.     That at all times herein mentioned, and upon information and belief, THE PROCTER & GAMBLE COMPANY, was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

55.     That at all times herein mentioned, and upon information and belief, THE PROCTER & GAMBLE COMPANY was and still is a domestic business corporation doing business in the State of New York.

56.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY was and still is a domestic limited liability company organized and existing under and by virtue of the laws of the State of New York.

57.     That at the time hereinafter mentioned, and upon information and belief, Defendant, THE PROCTER & GAMBLE COMPANY was a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

58.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY was and still is a foreign company authorized to do business under and by virtue of the laws of the State of New York.

59.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY was and still is a foreign corporation doing business in

12

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM   INDEX NO. 816111/2023

NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 10/05/2023

the State of New York

60.   That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY was and still is a foreign company doing business in the State of New York.

61.   That at all times herein mentioned, defendant THE PROCTER & GAMBLE COMPANY, was and still is a foreign business corporation organized and existing by virtue of the laws of the State of Ohio that transacts business in the State of New York.

62.   That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY maintained a principal place of business in the 1 Procter and Gamble Plaza, Cincinnati, OH 45202

63.   That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY was and still is a foreign limited liability company authorized to do business under and by virtue of the laws of the State of New York.

64.   That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY maintained a principal place of business in the County of NASSAU, State of New York.

65.   That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY maintained a principal place of business in the County of New York, State of New York.

66.   That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE COMPANY conducted and carried on business in the County of New York, State of New York.

67.   That at all times herein mentioned, and upon information and belief, the Defendant,

13

THE PROCTER & GAMBLE COMPANY conducted and carried on business in the County of

Nassau, State of New York.

68.    That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE COMPANY transacted business within the County of

New York, State of New York.

69.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE COMPANY conducted and carried on business in the County of

Nassau, State of New York.

70.    That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE COMPANY transacted business within the County of

Nassau, State of New York.

71.    That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE COMPANY derived substantial revenue from interstate

or international commerce.

72.    That at all times herein mentioned, and upon information and belief, THE

PROCTER & GAMBLE PRODUCTIONS, INC., was and still is a domestic corporation organized

and existing under and by virtue of the laws of the State of New York.

73.    That at all times herein mentioned, and upon information and belief, THE

PROCTER & GAMBLE PRODUCTIONS, INC. was and still is a domestic business corporation

doing business in the State of New York.

74.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE PRODUCTIONS, INC. was and still is a domestic limited liability

company organized and existing under and by virtue of the laws of the State of New York.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 10/05/2023

75.    That at the time hereinafter mentioned, and upon information and belief, Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. was a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

76.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. was and still is a foreign company authorized to do business under and by virtue of the laws of the State of New York.

77.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. was and still is a foreign corporation doing business in the State of New York

78.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. was and still is a foreign company doing business in the State of New York.

79.    That at all times herein mentioned, defendant THE PROCTER & GAMBLE PRODUCTIONS, INC., was and still is a foreign business corporation organized and existing by virtue of the laws of the State of Ohio that transacts business in the State of New York.

80.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. maintained a principal place of business in the 1 Procter and Gamble Plaza, Cincinnati, OH 45202

81.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. was and still is a foreign limited liability company authorized to do business under and by virtue of the laws of the State of New York.

82.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. maintained a principal place of business in

15

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

the County of New York, State of New York.

83.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. maintained a principal place of business in the County of New York, State of New York.

84.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. conducted and carried on business in the County of New York, State of New York.

85.    That at all the times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. transacted business within the County of New York, State of New York.

86.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. conducted and carried on business in the County of Nassau, State of New York.

87.    That at all the times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. transacted business within the County of Nassau, State of New York.

88.    That at all the times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE PRODUCTIONS, INC. derived substantial revenue from interstate or international commerce.

89.    That at all times herein mentioned, and upon information and belief, THE PROCTER & GAMBLE MANUFACTURING COMPANY, was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

90.    That at all times herein mentioned, and upon information and belief, THE

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM     INDEX NO. 616111/2023

NYSCEF DOC. NO. 2                                                           RECEIVED NYSCEF: 10/05/2023

PROCTER & GAMBLE MANUFACTURING COMPANY was and still is a domestic business corporation doing business in the State of New York.

91.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY was and still is a domestic limited liability company organized and existing under and by virtue of the laws of the State of New York.

92.     That at the time hereinafter mentioned, and upon information and belief, Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY was a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

93.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY was and still is a foreign company authorized to do business under and by virtue of the laws of the State of New York.

94.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY was and still is a foreign corporation doing business in the State of New York

95.     That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY was and still is a foreign company doing business in the State of New York.

96.     That at all times herein mentioned, defendant THE PROCTER & GAMBLE MANUFACTURING COMPANY, was and still is a foreign business corporation organized and existing by virtue of the laws of the State of Ohio that transacts business in the State of New York.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

97.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE MANUFACTURING COMPANY maintained a principal place of

business in the 1 Procter and Gamble Plaza, Cincinnati, OH 45202

98.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE MANUFACTURING COMPANY was and still is a foreign limited

liability company authorized to do business under and by virtue of the laws of the State of New

York.

99.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE MANUFACTURING COMPANY maintained a principal place of

business in the County of NASSAU, State of New York.

100.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE MANUFACTURING COMPANY maintained a principal place of

business in the County of New York, State of New York.

101.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE MANUFACTURING COMPANY conducted and carried on

business in the County of New York, State of New York.

102.    That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE MANUFACTURING COMPANY conducted and carried on

business in the County of Nassau, State of New York.

103.    That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY transacted business

within the County of New York, State of New York.

104.    That at all times herein mentioned, and upon information and belief, the Defendant,

18

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM        INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                         RECEIVED NYSCEF: 10/05/2023

THE PROCTER & GAMBLE MANUFACTURING COMPANY conducted and carried on business in the County of Nassau, State of New York.

105.    That at all the times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY transacted business within the County of Nassau, State of New York.

106.    That at all the times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE MANUFACTURING COMPANY derived substantial revenue from interstate or international commerce.

107.    That at all times herein mentioned, and upon information and belief, THE PROCTER & GAMBLE DISTRIBUTING COMPANY, was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

108.    That at all times herein mentioned, and upon information and belief, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was and still is a domestic business corporation doing business in the State of New York.

109.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was and still is a domestic limited liability company organized and existing under and by virtue of the laws of the State of New York.

110.    That at the time hereinafter mentioned, and upon information and belief, Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

111.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was and still is a foreign company authorized to do business under and by virtue of the laws of the State of New York.

112.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was and still is a foreign corporation doing business in the State of New York

113.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was and still is a foreign company doing business in the State of New York.

114.    That at all times herein mentioned, defendant THE PROCTER & GAMBLE DISTRIBUTING COMPANY, was and still is a foreign business corporation organized and existing by virtue of the laws of the State of Ohio that transacts business in the State of New York.

115.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY maintained a principal place of business in the 1 Procter and Gamble Plaza, Cincinnati, OH 45202

116.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY was and still is a foreign limited liability company authorized to do business under and by virtue of the laws of the State of New York.

117.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY maintained a principal place of business in the County of NASSAU, State of New York.

118.    That at all times herein mentioned, and upon information and belief, the Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY maintained a principal place of business in the County of New York, State of New York.

119.    That at all times herein mentioned, and upon information and belief, the Defendant,

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM   INDEX NO. 816111/2023

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/05/2023

THE PROCTER & GAMBLE DISTRIBUTING COMPANY conducted and carried on business

in the County of New York, State of New York.

      120.  That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE DISTRIBUTING COMPANY conducted and carried on business

in the County of Nassau, State of New York.

      121.  That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY transacted business

within the County of New York, State of New York.

      122.  That at all times herein mentioned, and upon information and belief, the Defendant,

THE PROCTER & GAMBLE DISTRIBUTING COMPANY conducted and carried on business

in the County of Nassau, State of New York.

      123.  That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY transacted business

within the County of Nassau, State of New York.

      124.  That at all the times herein mentioned, and upon information and belief, the

Defendant, THE PROCTER & GAMBLE DISTRIBUTING COMPANY derived substantial

revenue from interstate or international commerce.

      125. This Court has personal jurisdiction over the Defendant insofar as the defendant

transacts and conducts business in the State of New York, maintains and carries on systematic and

continuous contacts in the State of New York, regularly transacts business within the State of New

York, and regularly avails itself of the benefits of the State of New York.

      126. Additionally, the Defendant caused tortious injury by acts and omissions, negligence

and carelessness in the State of New York and caused tortious injury in the State of New York by

acts and omissions, negligence and carelessness outside the State of New York while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in the State of New York.

## TOLLING OF STATUTE OF LIMITATIONS AND ESTOPPEL

127. Within the time period of any applicable statute of limitations, Plaintiff could not have discovered through the exercise of reasonable diligence that exposure to Benzene is injurious to human health.

128. Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of Benzene, nor would a reasonable and diligent investigation by Plaintiff have disclosed that Benzene was contained within Defendant's products and would cause Plaintiff's illnesses.

129. The expiration of any applicable statute of limitations have been equitably tolled by reason of Defendant's misrepresentations and concealment. Through affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the true risks associated with use of Benzene.

130. As a result of Defendant's actions, Plaintiff could not reasonably have known or learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

131. Defendant is estopped from relying on any statute of limitations because of their concealment of the truth regarding the safety of Benzene. Defendant had a duty to disclose the true character, quality, and nature of Benzene because this was non-public information over which Defendant continue to have control. Defendant knew that this information was not available to Plaintiff, Plaintiff's medical providers and/or health facilities, yet Defendant failed

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM          INDEX NO. 816111/2023

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 10/05/2023

to disclose the information to the public, including Plaintiff.

132. Defendant had the ability to and did spend enormous amounts of money in furtherance of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks. Plaintiff and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks and were forced to rely on Defendant's representations.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION: STRICT LIABILITY – DESIGN DEFECT

133. Plaintiff AMGAD S. MIKHAIL hereby repeats, reiterates, and re-alleges each and every allegation in paragraphs "1" through "132" with the same force and effect as if more fully and at length set forth herein.

134. Plaintiff brings this strict liability claim against Defendant(s) for defective design.

135. At all relevant times, Defendant(s) engaged in the business of testing, developing, designing, manufacturing, packaging, marketing, managing, maintaining, operating, selling, distributing, and promoting the Products which contained Benzene.

136. At all relevant times, Defendant(s) engaged in the business of testing, developing, designing, manufacturing, packaging, marketing, managing, maintaining, operating, selling, distributing, and promoting the Products which contained Benzene, which are defective and unreasonably dangerous to consumers, including Plaintiff.

137. At all relevant times, Defendant(s) engaged in the business of testing, developing, designing, manufacturing, packaging, marketing, managing, maintaining, operating, selling, distributing, and promoting the Products which contained Benzene, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Products with

23

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 816111/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

Benzene into the stream of commerce. These actions were under the exclusive and ultimate control and supervision of Defendant. At all relevant times, Defendant designed, researched, developed, manufactured, packaged, maintained, operated, managed, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Products used by Plaintiff as described herein.

138. At all relevant times, Defendant's Products were manufactured, designed, and labeled in an unsafe, defective, negligent, careless, hazardous and inherently dangerous manner that was inappropriate and contraindicated for use by or exposure to the public, including Plaintiff.

139. At all relevant times, Defendant's Products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant. At all relevant times, Defendant's registered, researched, manufactured, distributed, marketed and sold the Products within this judicial district and aimed at a consumer market within this judicial district. Defendant was at all relevant times involved in the retail and promotion of the Products marketed and sold in this judicial district.

140. Defendant's Products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by the Defendant was defective in design and formulation in that, when they left the control of Defendant's manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

141. Defendant's Products, as researched, tested, developed, designed, licensed,

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 616111/2023

RECEIVED NYSCEF: 10/05/2023

manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that, when they left the hands of Defendant's manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

142. At all relevant times, Defendant's knew or had reason to know that the Products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendant as they contained Benzene.

143. Therefore, at all relevant times, Defendant's Products, as researched, tested, developed, designed, registered, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant was defective in design and formulation, in one or more of the following ways:

a.      When placed in the stream of commerce, Defendant's Products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

b.      When placed in the stream of commerce, Defendant's Products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

c.      When placed in the stream of commerce, Defendant's Products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

d.      The Defendant did not sufficiently test, investigate, or study its Products and, specifically, that the Products contained Benzene which is a carcinogenic within the human body;

25

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/05/2023

      e.        Exposure to Products which included Benzene presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the product;

      f.        Defendant knew or should have known at the time of marketing the Products that exposure to Benzene could result in cancer and other severe illnesses and injuries, dang

      g.        Defendant did not conduct adequate post-marketing surveillance of its Products; and

      h.        Defendant could have employed safer alternative designs and formulations.

144.    Plaintiff used and was exposed to Defendant's Products without knowledge of the Product's dangerous characteristics.

145.    At all times relevant to this litigation, Plaintiff, used and/or was exposed to the use of Defendant's Products in an intended or reasonably foreseeable manner without knowledge of the Product's dangerous characteristics.

146.    Plaintiff could not reasonably have discovered the defects and risks associated with the Products before or at the time of exposure due to the Defendant's suppression or obfuscation of scientific information linking Benzene to cancer.

147.    The harm caused by Defendant's Products far outweighed their benefit, rendering Defendant's product dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendant's Products were and are more dangerous than alternative products, and Defendant could have designed the Products to make them less dangerous. Indeed, at the time Defendant designed the Products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM                    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 10/05/2023

148.    At the time the Products left the Defendant's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the Defendant's products.

149.    Defendant's defective design of the Products was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of users of the Products, including Plaintiff.

150.    Therefore, as a result of the unreasonably dangerous condition of their Products, Defendant was negligent and careless and is strictly liable to Plaintiff.

151.    The defects in Defendant's Products were substantial and contributing factors in causing Plaintiff's injuries, and, but for Defendant's negligence, carelessness, misconduct and omissions, Plaintiff would not have sustained injuries.

152.    Defendant's conduct, as described above, was reckless. Defendant risked the lives of consumers and users of its Products, including Plaintiff, with knowledge of the safety problems associated with the Products, and suppressed this knowledge from the general public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendant reckless conduct warrants an award of punitive damages.

153.    As a direct and proximate result of Defendant's placing its defective Products into the stream of commerce, and the resulting injuries, Plaintiff sustained pecuniary loss including general damages in a sum which exceeds the jurisdictional minimum of this Court.

154.    As a proximate result of Defendant placing its defective Products into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during which Plaintiff has suffered great mental anguish, traumatic personal injury and damages.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

155.  As a proximate result of the Defendant placing its defective Products into the stream of commerce, as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

156.  That by reason of the foregoing and the negligence of the Defendants, the Plaintiff, AMGAD S. MIKHAIL, was severely injured, suffered, still suffers and will continue to suffer for some time physical pain and bodily injuries and became sick, sore, lame and disabled and so remained for a considerable length of time.

157.  That by reason of the foregoing, the Plaintiff, AMGAD S. MIKHAIL, was compelled to and did necessarily require medical aid and attention, and did necessarily pay and become liable therefore for medicines and upon information and belief, the Plaintiff will necessarily incur similar expenses in the future.

158.  That by reason of the foregoing, the Plaintiff AMGAD S. MIKHAIL, has been unable to attend to her usual occupation in the manner required.

159.  That by reason of the wrongful, negligent and unlawful actions of the defendants, as aforesaid, the Plaintiff, AMGAD S. MIKHAIL, sustained economic loss and out of pocket expenses in connection with underlying injury.

160.  That one or more of the exceptions of paragraph 1602 of the Civil Practice Law and Rules applies to the within action.

161.  That defendants were further negligent in the hiring, screening, training and supervision of their employees. Employees knew or should have known and should have let the public know of benzene presence in the Defendants' Products.

162.  That as a result of the foregoing, the Plaintiff, AMGAD S. MIKHAIL, sustained damages in an amount that exceeds the jurisdictional limits of the lower courts.

## AS AND FOR A SECOND CAUSE OF ACTION:
## STRICT LIABILITY – FAILURE TO WARN

163.  Plaintiff AMGAD S. MIKHAIL hereby repeats, reiterates, and re-alleges each and every allegation in paragraphs "1" through "162" with the same force and effect as if more fully and at length set forth

herein.

164. Plaintiff brings this strict liability claim against Defendant for failure to warn.

165. At all relevant times, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Products which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Benzene. These actions were under the exclusive, ultimate control and supervision of the Defendant. At all relevant times, the Defendant registered, researched, manufactured, distributed, marketed, and sold the Products within this judicial district and aimed at a consumer market. Defendant was at all relevant times involved in the retail and promotion of the Products marketed and sold in in this judicial district.

166. Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce it's Products, and in the course of same, directly advertised or marketed the Products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the use of the Products.

167. At all relevant times, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings and take such steps as necessary to ensure its Products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendant had a continuing duty to warn Plaintiff of dangers associated with the Products and the Benzene contained within same. Defendant, as a manufacturer, seller, or distributor of the Product, are held to the knowledge of an expert in the field.

168. At the time of manufacture, Defendant could have provided the warnings or instructions

29

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

regarding the full and complete risks of the Products that contained Benzene because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such Products.

169. At all relevant times, Defendant failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of the Products and to those who would foreseeably use or be harmed by Defendant's Products, including Plaintiff.

170. Even though Defendant knew or should have known that the Products contained Benzene and thereby posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of the Products and the carcinogenic characteristics of Benzene within the human body, as described above, were known to the Defendant, or scientifically knowable to the Defendant through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff.

171. Defendant knew or should have known that the Products created significant risks of serious bodily harm to consumers, as alleged herein, and the Defendant failed to adequately warn consumers, *i.e.*, the reasonably foreseeable users, of the risks of exposure to the Products. Defendant has wrongfully concealed information concerning the dangerous nature of the Products and the potential for the Benzene contained within the Products to cause cancer, and further, has made false and/or misleading statements concerning the safety of the Products.

172. At all relevant times, Defendant's Benzene products reached the intended consumers,

INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 10/05/2023

handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

173. At all relevant times, Plaintiff used and/or was exposed to the use of Defendant's Products while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics, including but not limited to, that Benzene was contained within same.

174. Plaintiff could not have reasonably discovered the defects and risks associated with the Products prior to or at the time of utilizing, consuming and/or applying the Products. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant to know about and disclose serious health risks associated with using Defendant's Products.

175. Defendant knew or should have known that the minimal warnings disseminated with the Products were inadequate, failed to communicate adequate information on the dangers and safe use/exposure, and failed to communicate warnings and instructions that were appropriate and adequate to render the Products safe for their ordinary, intended and reasonably foreseeable uses.

176. The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as the Plaintiff, to utilize the products safely and with adequate protection or not utilize the products at all. Instead, Defendant disseminated information that was inaccurate, false and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the Products and Benzene;

31

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

continued to aggressively promote the efficacy of its products, even after they knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of utilizing, applying and/or ingesting the Products.

177. This alleged failure to warn is not limited to the information contained on the Product's labeling. The Defendant was able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with the Products and/or Benzene through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But the Defendant did not disclose these known risks through any medium.

178. Defendant is liable to Plaintiff for injuries caused by their negligent, carless or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of the Products and the risks associated with the use of same and/or exposure to Benzene.

179. Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with the Products, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative products.

180. As a direct and proximate result of Defendant placing the defective Products into the stream of commerce, Plaintiff was injured and has sustained pecuniary loss resulting and general damages in a sum exceeding the jurisdictional minimum of this Court.

181. As a proximate result of Defendant placing the defective Products into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during

32

which Plaintiff suffered great mental anguish and other personal injury and damages. As a

proximate result of the Defendant placing defective Products into the stream of commerce,

as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

182. That as a result of the foregoing, Plaintiff respectfully request this Court to enter judgment

in Plaintiff's favor for compensatory and punitive damages, together with interest, costs

herein incurred, attorneys' fees and all such other and further relief as this Court deems just

and proper in an amount which exceeds the jurisdictional limits of all lower Courts which

would otherwise have jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION: NEGLIGENCE and NEGLIGENCE PER SE

183. Plaintiff AMGAD S. MIKHAIL hereby, repeats, reiterates, and re-alleges each and every

allegation in paragraphs "1" through "182" with the same force and effect as if more fully and at

length set forth herein.

184. Defendant, directly or indirectly, caused the Products to be sold, distributed, packaged,

labeled, marketed, promoted, and/or used by Plaintiff. At all relevant times, Defendant

registered, researched, manufactured, distributed, marketed and sold the Products within

this judicial district and aimed at a consumer market within this district.

185. At all relevant times, Defendant had a duty to exercise reasonable care in the design,

research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and

distribution of the Products, including the duty to take all reasonable steps necessary to

manufacture, promote, and/or sell a product that was not unreasonably dangerous to

consumers and users of the Products.

186. At all relevant times, Defendant had a duty to exercise reasonable care in the marketing,

advertisement, and sale of the Products. Defendant's duty of care owed to consumers and

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM   INDEX NO. 616111/2023

NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 10/05/2023

the general public included providing accurate, true, and correct information concerning the risks of using the Products and appropriate, complete, and accurate warnings concerning the potential adverse effects of the Products and, in particular, the carcinogenic effects of Benzene.

187.   At all relevant times, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of the Products and, specifically, the carcinogenic properties of Benzene.

188.   Accordingly, at all relevant times, Defendant knew or, in the exercise of reasonable care, should have known that use of the Products which contained Benzene could cause or be associated with Plaintiff's injuries, and thus, create a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

189.   Defendant also knew or, in the exercise of reasonable care, should have known that users and consumers of the Products were unaware of the risks and the magnitude of the risks associated with use of the Products which contained Benzene.

190.   As such, Defendant breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of the Products, in that Defendant manufactured and produced defective Products which contained Benzene, a known carcinogen; knew or had reason to know of the defects inherent in its products; knew or had reason to know that a user's or consumer's use of the products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries. Indeed, Defendant deliberately refused to test the Products because they knew that the Benzene contained within said Products posed serious health

34

Case 2:23-cv-08157-GRB-AYS   Document 1-2   Filed 11/01/23   Page 36 of 51 PageID
FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 616111/2023
RECEIVED NYSCEF: 10/05/2023

risks to humans.

191.    Defendant were negligent in their promotion of the Products, outside of the labeling

context, by failing to disclose material risk information as part of their promotion and

marketing of the Products, including the internet, television, print advertisements, etc.

Nothing prevented Defendant from being honest in their promotional activities, and, in fact,

Defendant had a duty to disclose the truth about the risks associated with the Products and

Benzene in their promotional efforts, outside of the context of labeling.

192.    Despite their ability and means to investigate, study, and test the products and to provide

adequate warnings, Defendant failed to do so. Indeed, Defendant wrongfully concealed

information and further made false and/or misleading statements concerning the safety and

use of the Products and Benzene.

193. Defendant's negligence and negligence per se included:

a.    Manufacturing, producing, promoting, managing, maintaining, operating,

formulating, creating, developing, designing, packaging, selling, and/or distributing the

Products without thorough and adequate pre- and post-market testing;

b.    Manufacturing, producing, promoting, formulating, creating, developing,

designing, selling, and/or distributing the Products while negligently and/or intentionally

concealing and failing to disclose the results of trials, tests, and studies of the Products and/or

Benzene and the carcinogenic effects as created in the human body as a result of ingesting

Benzene, and, consequently, the risk of serious harm associated with human use of Benzene;

c.    Failing to undertake sufficient studies and conduct necessary tests to  determine

whether or not the Products were safe for their intended consumer use;

d.    Failing to use reasonable and prudent care in the design, research, manufacture, and

development of the Products so as to avoid the risk of serious harm associated with the prevalent use of Benzene products;

e.      Failing to design and manufacture the Products so as to ensure they were at least as safe and effective as other products on the market intended to be utilized in the same manner;

f.      Designing and manufacturing the Products in a defective, unsafe and unreasonably dangerous manner as said Products contained Benzene;

g.      Failing to provide adequate instructions, guidelines, and safety precautions to those persons Defendant could reasonably foresee would use the Products;

h.      Failing to disclose to Plaintiff, users/consumers, and the general public that use of the Products and/or that Benzene presented severe risks of cancer and other grave illnesses;

i.      Failing to warn Plaintiff, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative products available to Plaintiff and other consumers;

j.      Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of the Products and/or Benzene;

k.      Representing that their Benzene products were safe for their intended use when, in fact, Defendant knew or should have known the products were not safe for their intended purpose;

l.      Declining to make or propose any changes to the Products' labeling or other promotional materials that would alert consumers and the general public of the risks of the Product and/or Benzene;

m.      Advertising, marketing, and recommending the use of the Products, while concealing and failing to disclose or warn of the dangers known (by Defendant) to be

associated with or caused by the use of or exposure to the Products and/or Benzene;

n.    Continuing to disseminate information to its consumers, which indicate or imply
that Defendant's Products are not unsafe for regular consumer use; and

o.    Continuing the manufacture and sale of their Products with the knowledge that the
Products were unreasonably unsafe and dangerous.

194.    Defendant knew and/or should have known that it was foreseeable consumers such as
Plaintiff would suffer injuries as a result of Defendant's failure to exercise ordinary care in
the manufacturing, marketing, labeling, distribution, and sale of the Products.

195.    Plaintiff did not know the nature and extent of the injuries that could result from the
intended use of and/or exposure to the Products and/or Benzene.

196.    Defendant's negligence was the proximate cause of Plaintiff's injuries, i.e., absent
Defendant's negligence, Plaintiff would not have developed cancer.

197.    Defendant's conduct, as described above was careless, negligent and reckless.
Defendant regularly risked the lives of consumers and users of their products, including
Plaintiff, with full knowledge of the dangers of their products. Defendant has made
conscious decisions not to redesign, re- label, warn, or inform the unsuspecting public,
including Plaintiff. Defendant's reckless conduct therefore warrants an award of punitive
damages.

198.    As a direct and proximate result of Defendant placing defective Products with Benzene
into the stream of commerce, Plaintiff was injured and has sustained pecuniary loss and
general damages in a sum exceeding the jurisdictional minimum of this Court.

199.    As a proximate result of Defendant placing defective Products with Benzene into the
stream of commerce, as alleged herein, there was a measurable and significant interval of

37

time during which Plaintiff suffered great mental anguish and other personal injury and damages. As a proximate result of Defendant's placing defective Products with Benzene into the stream of commerce, as alleged herein, Plaintiff sustained a loss of income, and loss of earning capacity.

200. · That as a result of the foregoing, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.·

### AS AND FOR A FORTH CAUSE OF ACTION:
### BREACH OF EXPRESS WARRANTIES

201.    Plaintiff AMGAD S. MIKHAIL hereby repeats, reiterates, and re-alleges each and every allegation in paragraphs "1" through "200" with the same force and effect as if more fully and at length set forth herein.

202.    At all relevant times, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting their Products, which were defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing their Products, which included Benzene, into the stream of commerce. These actions were under the ultimate control and supervision of Defendant.

203. Defendant had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of their Products, including a duty to:

a.    ensure that its products did not cause the user unreasonably dangerous side effects;

b.    warn of dangerous and potentially fatal side effects; and

INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                                                 RECEIVED NYSCEF: 10/05/2023

c.   disclose adverse material facts, such as the true risks associated with the use of and exposure to their Products and/or Benzene, when making representations to consumers and the general public, including Plaintiff.

204.   As alleged throughout this pleading, the ability of Defendant to properly disclose those risks associated with their Products is not limited to representations made on the labeling.

205.   At all relevant times, Defendant expressly represented and warranted to the purchasers of its Products, by and through statements made by Defendant in labels, publications, package inserts, and other written materials intended for consumers and the general public, that the Products were safe to human health and the environment, effective, fit, and proper for their intended use. Defendant advertised, labeled, marketed, and promoted their Products, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that their Products would conform to the representations.

206.   These express representations include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to their Products. Defendant knew and/or should have known that the risks expressly included in their Product's warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein. Nevertheless, Defendant expressly represented that Benzene the Products were safe and effective, that they were safe and effective for use by individuals such as the Plaintiff, and/or that they were safe and effective as consumer products.

207.   The representations about the Products, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods

39

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                                      RECEIVED NYSCEF: 10/05/2023

and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

208.  Defendant placed the Products into the stream of commerce for sale and recommended their use to consumers and the public without adequately warning of the true risks of developing the injuries associated with the use of the Products and/or Benzene.

209.  Defendant breached these warranties because, among other things, the Products were defective, dangerous, and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Defendant breached the warranties in the following ways:

a.  Defendant represented through its labeling, advertising, and marketing materials that the Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Products and/or that they contained Benzene and by expressly limiting the risks associated with use within its warnings and labels; and

b.  Defendant represented that the Products were safe for use and intentionally concealed information that demonstrated that the Products, as they contained Benzene, had carcinogenic properties, and that the Products, therefore, were not safer than alternatives available on the market.

210.  Plaintiff detrimentally relied on the express warranties and representations of Defendant concerning the safety and/or risk profile of the Products in deciding to purchase the product. Plaintiff reasonably relied upon Defendant to disclose known defects, risks, dangers, and side effects of the Products and/or Benzene. Plaintiff would not have purchased or used the Products had Defendant properly disclosed the risks associated with the products, either

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM          INDEX NO. 616111/2023

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 10/05/2023

through advertising, labeling, or any other form of disclosure.

211.   Defendant had sole access to material facts concerning the nature of the risks associated with its Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff could not have reasonably discovered that the risks expressly included in the Products' warnings and labels were inadequate and inaccurate.

212.   Plaintiff had no knowledge of the falsity or incompleteness of Defendant's statements and representations concerning the Products.

213.   Plaintiff used and/or was exposed to the Products which contained Benzene as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendant.

214.   Had the warnings, labels, advertisements, or promotional material for the Products accurately and adequately set forth the true risks associated with the use of such Products, including exposure to Benzene and Plaintiff's injuries, rather than expressly excluding such information and warranting that the Products were safe for their intended use, Plaintiff could have avoided the injuries complained of herein.

215.   As a direct and proximate result of Defendant's breach of express warranty, Plaintiff have sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

216.   As a proximate result of Defendant's breach of express warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

217.   As a proximate result of Defendant's breach of express warranty, as alleged herein,

41

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

Plaintiff sustained a loss of income and/or loss of earning capacity.

218.    That as a result of the foregoing, Plaintiff respectfully request this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.

### AS AND FOR A FIFTH CAUSE OF ACTION:
### BREACH OF IMPLIED WARRANTIES

219.    Plaintiff AMGAD S. MIKHAIL hereby repeats, reiterates, and re-alleges each and every allegation in paragraphs "1" through "218" with the same force and effect as if more fully and at length set forth herein.

220.    At all relevant times, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting their Products, which were and are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing the Products into the stream of commerce.

221.    Before the time Plaintiff used the Products, Defendant impliedly warranted to its consumers, including Plaintiff, that the Products were of merchantable quality and did not contain Benzene and/or other harmful substances/chemicals and safe and fit for the use for which they were intended; specifically, as consumer antiperspirants.

222.    But Defendant failed to disclose that the Products has dangerous propensities when used as intended, including Benzene and that use of the Products carries an increased risk of developing severe injuries, including Plaintiff's injuries.

223.    Plaintiff were intended beneficiaries of the implied warranties made by Defendant to

42

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023

NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 10/05/2023

purchasers of its Products.

224.    The Products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by Defendant.

225.    At all relevant times, Defendant were aware that consumers and users of its Products, including Plaintiff, would use the Products as marketed by Defendant, which is to say that Plaintiff were foreseeable users of the Products.

226.    Defendant intended that the Products be used in the manner in which Plaintiff, in fact, used them and which Defendant impliedly warranted to be of merchantable quality, safe, and fit for this use, even though the Products were not adequately tested or researched.

227.    In reliance upon Defendant's implied warranty, Plaintiff used the Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendant.

228.    Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with the Products and that they contained Benzene.

229.    Defendant breached their implied warranty to Plaintiff in that the Products were not of merchantable quality, safe, or fit for their intended use, or adequately tested and that the Products, as they contained Benzene, had dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

230.    The harm caused by Defendant's Products far outweighed their benefit, rendering the Products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

231.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff have sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

232.    As a proximate result of the Defendant's breach of implied warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

233.    As a proximate result of Defendant's breach of implied warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.

234.    That as a result of the foregoing; Plaintiff respectfully request this Court to enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.

### AS AND FOR A SIXTH CAUSE OF ACTION:
### VIOLATION OF CONSUMER PROTECTION STATUTES

235.    Plaintiff AMGAD S. MIKHAIL hereby repeats, reiterates, and re-alleges each and every allegation in paragraphs "1" through "2234" with the same force and effect as if more fully and at length set forth herein.

236. Plaintiff was a consumer who purchased the Products through retail and on-line providers/outlets.

237. Defendant has engaged in "consumer-oriented" conduct through its testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting their Products that was materially misleading.

238. The aforesaid unfair and deceptive trade acts and practices have directly and foreseeably,

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

and proximately caused injury and damages to Plaintiff in amounts yet to be determined.

239. The aforesaid acts and failures to act of Defendant constitute acts, uses, or employment by Defendant of unconscionable commercial practices in connection with the sale of merchandise, as well as false advertising and deceptive and misleading practices within the meaning of New York's Consumer Protection from Deceptive Acts and Practices Act, General Business Law §§ 349 and 350 and the Federal Trade Commission Act.

240. That as a result of the foregoing, Plaintiff respectfully request this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.

## AS AND FOR A SEVENTH CAUSE OF ACTION: PUNITIVE DAMAGES

241. Plaintiff AMGAD S. MIKHAIL hereby repeats, reiterates, and re-alleges each and every allegation in paragraphs "1" through "240" with the same force and effect as if more fully and at length set forth herein.

242. The Defendant has been or should have been aware for years of independent scientific studies linking the use of Benzene to the increased risk of cancer. Despite this overwhelming body of evidence the Defendant failed to inform their consumers of this known hazard. As such, the Defendant should be liable for punitive damages to the Plaintiff.

243. Defendant's conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendant were fully aware of the safety risks of their Products, particularly the carcinogenic potential of Benzene within the chemical environment of the human body. Nonetheless, Defendant deliberately crafted their label, marketing, and promotion to mislead consumers.

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/05/2023

244.    This was not done by accident or through some justifiable negligence. Rather, Defendant knew that it could turn a profit by convincing consumers that the Product was harmless to humans, and that full disclosure of the true risks of the Products would limit the amount of money Defendant would make selling Benzene. Defendant's object was accomplished not only through its misleading label, but through a comprehensive scheme of selective misleading research and testing, false advertising, and deceptive omissions as more fully alleged throughout this pleading. Plaintiff was denied the right to make an informed decision about whether to purchase and use the Products, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiff's rights

245.    The Defendant acted willfully, wantonly, with an evil motive, and recklessly. In one or more of the following ways:

a.    Defendant knew of the unreasonably high risk of cancer posed by the Products before manufacturing, marketing, distributing and/or selling the Products, yet purposefully proceeded with such action;

b.    Despite their knowledge of the high risk of cancer associated with the Products, which contained Benzene, Defendant affirmatively minimized this risk through marketing and promotional efforts and product labeling; and,

c.    Through the actions outlined above, Defendant exhibited a reckless indifference to the safety of users of the Products including Plaintiff as described herein, knowing the dangers and risks of the Products yet concealing and/or omitting this information. Their action was outrageous because of Defendant's evil motive or a reckless indifference to the safety of users of the Products including Plaintiff.

246.    As a direct and proximate result of the willful, wanton, evilly motivated and/or

reckless conduct of the Defendant, the Plaintiff sustained damaged as set forth above.

247. Accordingly, Plaintiff requests punitive damages against Defendant for the harms caused to Plaintiff.

248. Defendants had a duty to general public including but not limited to Plaintiff in the matter to manufacture, label, operate, manage, test; maintain, package ,distribute, market, sell, etc safe product. Defendants breached their duty as stated above.

249. Above stated product(s) was a direct cause of Plaintiff's injury.

250. Plaintiff sustained, suffered and continuing to suffer traumatic injuries including but not limited to cancer.

251. That as a result of the foregoing, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests this Court to enter judgment in Plaintiff's favor and against the Defendant in the FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH and SEVENTH Causes of action as demanded above for:

a. actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

b. exemplary and punitive damages sufficient to punish and deter the Defendant and others from future wrongful practices;

c. pre-judgment and post-judgment interest;

d. costs including reasonable attorneys' fees, court costs, and other litigation

47

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM    INDEX NO. 616111/2023
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/05/2023

expenses;

e. any other relief the Court may deem just and proper;

f. all in amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

Dated: Woodhaven, NY
October 4, 2023

Yours, etc.

GAMBONE LAW GROUP, PLLC
_/s/ Adilya R. Gambone_
By: Adilya R. Gambone, Esq.
Attorney(s) for Plaintiff(s)
AMGAD S. MIKHAIL
8652 Woodhaven Blvd., 2nd Floor
Woodhaven, NY 11421
T: 718 650 5111
F: 718 682 3155
agambone@gambonelawgroup.com

48

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 616111/2023
RECEIVED NYSCEF: 10/05/2023

STATE OF NEW YORK)
COUNTY OF QUEENS)

The undersigned, affirms that the following statements are true under the penalties of perjury.

This SUMMONS AND COMPLAINT and the papers on which it is based, are certified pursuant to Section 130-k.1-a of the rules of the Chief Administrator (22NYCRR)

That deponent is the plaintiff in the within action; that deponent has read the foregoing SUMMONS AND COMPLAINT and knows the contents thereof; that same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows:

Personal knowledge, information and investigation on the file.

SWORN TO BEFORE ME THIS
8  DAY OF February 2022

Notary Public

AMBER R GAYNOR
Notary Public  State of New York
NO. 02GA6u358422
Qualified in Kings County
My Commission Exp

FILED: NASSAU COUNTY CLERK 10/05/2023 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 616111/2023

RECEIVED NYSCEF: 10/05/2023

*Index No.*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------------------X

AMGAD S. MIKHAIL,

Plaintiff (s),

-against-

THE PROCTER & GAMBLE COMPANY, PROCTER & GAMBLE PRODUCTIONS, INC.,
THE PROCTER & GAMBLE MANUFACTURING COMPANY and THE PROCTER &
GAMBLE DISTRIBUTING COMPANY,

Defendant (s),

-----------------------------------------------------------------------------X

SUMMONS and VERIFIED COMPLAINT

# GAMBONE LAW GROUP, PLLC
Attorneys for Plaintiff

*Office and Post Office Address, Telephone*
8652 Woodhaven Blvd.

Woodhaven, NY 11421

TELEPHONE (718) 650-5111
agambone@gambonelawgroup.com

**"WE DO NOT ACCEPT SERVICE BY ELECTRONIC TRANSMISSION (FAX)"**

*Attorney(s) for*

*Service of a copy of the within*      *is hereby admitted*
*Dated:,*

.............................................................
*Attorney(s) for*

1